IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CURTIS M. ABORDO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF HAWAIʻI, DEPARTMENT OF PUBLIC SAFETY,<br><br>　　　　Defendant. | Case No. 19-cv-00130-DKW-RT<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND**[1] |

On March 13, 2019, Plaintiff Curtis M. Abordo, proceeding pro se, filed a Complaint against the State of Hawaiʻi Department of Public Safety (DPS), in which he appears to allege violations of certain constitutional rights by DPS. Dkt. No. 1. At the same time, Abordo filed an application to proceed *in forma pauperis* ("IFP Application").[2] Dkt. No. 2.

I. **Abordo's IFP Application**

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that

---

[1] Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

[2] The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

Here, Abordo has made the required showing under Section 1915(a). In the IFP Application, Abordo states that he receives social security disability payments in the amount of $669.[3] Abordo further states that he does not receive any other income, he has no things of value, and has no money in a checking or savings account. Abordo also reports monthly expenses of $600 for rent.

In light of these figures, it appears that Abordo's income falls below the poverty threshold identified by the Department of Health and Human Services' ("HHS") 2019 Poverty Guidelines. *See* HHS Poverty Guidelines, available at: https://aspe.hhs.gov/poverty-guidelines. In addition, it appears that Abordo has no assets sufficient to provide security. As a result, the Court GRANTS the IFP Application, Dkt. No. 2.

---

[3]The IFP Application actually states that Abordo receives $669 in gross and take-home pay, but, considering Abordo does not state that he has an employer and does state he receives disability, the Court construes the $669 as disability payments.

## II. Screening of Abordo's Complaint

The Court liberally construes a pro se Complaint. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant or supply the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In the Complaint, one factual source appears to provide the basis for all of Abordo's claims. More specifically, Abordo alleges that, in 2014, he completed serving a period of probation. Despite this, he alleges that, on March 11, 2017, DPS illegally arrested him for violating the probation that he had fully served. Due to that alleged event, Abordo appears to allege that various constitutional rights were violated. The Court addresses those claims below to the extent they can be discerned.[4]

### 1. Fourth Amendment

The Complaint alleges that Abordo was falsely imprisoned and unlawfully detained. A claim for false imprisonment and/or false arrest, ordinarily, falls under the Fourth Amendment. *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (applying Fourth Amendment principles to claims of false arrest and

---

[4]For present purposes, the Court construes all of the claims as being brought under 42 U.S.C. § 1983.

false imprisonment). "For both false arrest and false imprisonment, the essential elements are (1) the detention or restraint of one against his will, and (2) the unlawfulness of such detention or restraint." *Reed v. City & Cty. of Honolulu*, 873 P.2d 98, 109 (Haw. 1994) (quotation, internal quotation, and alteration omitted). The existence of probable cause to arrest, though, is a defense to any such claim. *Id.*; *Fayer*, 649 F.3d at 1064-65. "Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty." *State v. Maganis*, 123 P.3d 679, 681 (Haw. 2005) (quotation and emphasis omitted); *see also Fayer*, 649 F.3d at 1064.

Here, the Complaint appears to allege a Fourth Amendment violation. In Hawaiʻi, "[u]pon the termination of the period of the probation or the earlier discharge of the defendant, the defendant shall be relieved of any obligations imposed by the order of the court and shall have satisfied the disposition of the court…." Haw. Rev. Stat. § 706-630. Abordo alleges that he was arrested for violating his probation, even though he had "fully served" his probation at the

time.  Thus, at the time of arrest, there was no probable cause that Abordo had violated his probation, assuming the truth of the allegations.

The Court acknowledges that the factual allegations in the Complaint are sparse, and there very likely is more to the story than that which is contained within the four corners of the Complaint.[5]  Nonetheless, for present purposes, the Complaint alleges a plausible claim of false arrest/false imprisonment and, despite the paucity of facts, puts DPS on notice of a Fourth Amendment claim.  As a result, for screening purposes, the Court does not dismiss this claim.

## 2. <u>Fifth Amendment</u>

The Complaint alleges that Abordo's Fifth Amendment rights were violated. Although it is not entirely clear which of Abordo's Fifth Amendment rights were allegedly violated, liberally construing the allegations in the Complaint, at least two violations are implicated.  First, the Complaint may be alleging that Abordo was arrested without a grand jury indictment.  The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury…."  However, the Fifth Amendment's grand jury requirement is not applicable to the States through the Fourteenth Amendment.  *Morford v. Hocker*, 394 F.2d 169, 170 (9th Cir.

---

[5]For instance, it may be that Abordo was arrested for reasons having nothing to do with his fully-served probation.

1968); *Olivier v. Cty. of Los Angeles*, 426 F. App'x 578, 578 (9th Cir. Apr. 12, 2011); *State v. Israel*, 890 P.2d 303, 309 n.8 (Haw. 1995) (explaining that the Fifth Amendment's grand jury requirement "is not mandated by the federal constitution in state proceedings."). Therefore, to the extent Abordo is attempting to assert any claim premised upon the Fifth Amendment's grand jury requirement, it is dismissed with prejudice and without leave to amend.

Second, the Complaint may be alleging a delay between Abordo's arrest and the initiation of a criminal prosecution against him. "The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive preindictment delay." *United States v. Gregory*, 322 F.3d 1157, 1165 (9th Cir. 2003) (quotation and citation omitted). To establish such a claim, a party must allege "actual, non-speculative prejudice" such that the same "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id*. (quotations omitted); *Law v. Alameida*, 27 F. App'x 918, 920 (9th Cir. Dec. 28, 2001) (applying the same standard under the Fourteenth Amendment). Here, although Abordo appears to allege that he spent 54 days in prison, that is not the type of actual prejudice necessary to state a due process claim. *See Gregory*, 322 F.3d at 1165 (explaining that a party "must demonstrate

how the loss of a witness and/or evidence is prejudicial to his case.").[6] As a result, to the extent Abordo attempts to allege a claim of preindictment delay, the same is dismissed without prejudice and with leave to amend.

### 3. **Fourteenth Amendment**

The Complaint alleges that Abordo spent 54 days in jail. It is later alleged that Abordo's right to notice of the charges against him was violated. Construing those two allegations liberally, it appears that the Complaint is alleging a procedural due process claim due to a lack of notice and/or a chance to be heard. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. State of Arkansas*, 333 U.S. 196, 201 (1948). In the context of probation or parole revocation, such as what appears to be alleged in the Complaint, procedural due process requires a preliminary hearing, "as promptly as convenient after arrest," to determine if there is probable cause of a probation violation and a final hearing to determine whether probation should be revoked. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 485-489 (1972).

---

[6]The Court further notes that it is far from clear from the allegations in the Complaint whether Abordo was ever indicted after being arrested and, if so, when.

Here, as with the Fourth Amendment claim discussed above, there is a sparsity of factual information alleged in the Complaint concerning the 54 days Abordo spent in jail, including, other than strip searches, what transpired during those 54 days. Read, as written, though, if Abordo sat in jail for 54 days without any process being provided, that might not be considered "as promptly as convenient after arrest" for holding a preliminary hearing. *Cf. Pickett v. Allen*, 528 F. App'x 714, 715 (9th Cir. June 17, 2013) (concluding that parole officials would not have known that an 18-day delay in holding a preliminary hearing was unconstitutional in light of a 21-day delay that did not violate due process as stated in *Pierre v. Washington State Bd. of Prison Terms & Paroles*, 699 F.2d 471, 473 (9th Cir. 1983)). As a result, for screening purposes, the Court does not dismiss this claim.

### 4. **Sixth Amendment**

The Complaint alleges that no counsel was provided to Abordo, and this violated his Sixth Amendment right to counsel. This claim is complicated by some of the information, mentioned above, that is omitted from the Complaint. Notably, at no point does the Complaint allege whether Abordo was prosecuted for any probation violation and/or whether his probation was ultimately revoked after his alleged arrest.

If Abordo had been *prosecuted* for violating his probation, the Sixth Amendment right to counsel would attach when adversary proceedings were initiated against him. *United States v. Hayes*, 231 F.3d 663, 671-672 (9th Cir. 2000). Here, the only allegation in the Complaint is that Abordo was arrested. In Hawaiʻi, "[a]n adversarial judicial criminal proceeding does not commence upon the mere arrest of an accused." *State v. Luton*, 927 P.2d 844, 849 (Haw. 1996); *see also Moore v. Illinois*, 434 U.S. 220, 228 (1977) (concluding that adversarial proceedings had been initiated when, under State law, prosecution was considered to have commenced). Therefore, based upon the allegations of the Complaint, Abordo's Sixth Amendment right to counsel had not attached.[7]

In the context of the *revocation* of probation, a person is not guaranteed the assistance of counsel. *Gagnon*, 411 U.S. at 789-790. Moreover, here, the Complaint does not allege that Abordo was put through either a preliminary or a final probation revocation hearing. Thus, the right to counsel, as explained in *Gagnon*, would not appear to exist. *See id*. at 786-790.

---

[7]The Court also notes that, in light of the allegations in the Complaint, Abordo's Fifth Amendment right to counsel would not have attached, as there is no allegation that he was subject to interrogation after his arrest. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (explaining that "an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation.").

In summary, with respect to any claim that Abordo's right(s) to counsel were violated, the Complaint is simply too vague for the Court to conclude that any such claim has been alleged. As a result, to the extent Abordo attempts to allege a claim or claims related to the right to counsel, the claim(s) are dismissed without prejudice and with leave to amend. Should Abordo attempt to re-allege any claim related to the right to counsel in an amended complaint, he <u>must</u> allege, if applicable, whether he was interrogated following his arrest, whether he was arraigned or otherwise prosecuted for allegedly violating his probation, and/or whether he was subject to probation revocation proceedings following his arrest.

5. **The Complaint's "Second Cause of Action"**

All of the foregoing claims are placed under the heading "First Cause of Action[.]" The Complaint also contains a "Second Cause of Action[.]" Thereunder, it is not precisely clear what (if any) *claim* is presented. Instead, it appears that Abordo is merely requesting various forms of *relief*. For example, Abordo asks this Court to send DPS a "strong message," which would appear to be a form of declaratory relief. He also asks this Court to "restrict and police" DPS, which would appear to be a form of injunctive relief, and to "sanction" DPS, which would appear to be a form of punitive damages. Because the Complaint does not appear to allege any claim in the "Second Cause of Action[,]" the Court does not

further address it, other than to note that, at a minimum, Abordo will need to prevail on one of his underlying *claims* in order to be entitled to any *relief*–whether monetary or equitable–in this case.

### 6. The Complaint's "Claims for Relief"

In another section of the Complaint, headed "Claims for Relief[,]" Abordo alleges that he suffered, *inter alia*, "extreme emotional stress…." To the extent this allegation is meant to be an attempt to assert a claim for negligent and/or intentional infliction of emotional distress, the same is dismissed without prejudice and with leave to amend for the simple reason that, other than the assertion that Abordo suffered "extreme emotional stress[,]" the Complaint alleges insufficient facts to support any such claim(s). *See Hac v. Univ. of Haw.*, 73 P.3d 46, 60-61 (Haw. 2003) (stating that a claim of intentional infliction of emotional distress requires a plaintiff to allege: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."); *Tseu ex rel. Hobbs v. Jeyte*, 962 P.2d 344, 351 (Haw. 1998) (stating that "negligent infliction of emotional distress exists under circumstances where a reasonable man or woman, normally constituted, would be unable to adequately cope with the mental stress engendered by the

circumstances of the case" and requires some form of physical injury to recover damages) (quotation omitted).

### III. <u>Limited Leave to Amend</u>

As set forth above, Abordo may amend the Complaint to cure the deficiencies that have been identified in this Order. More specifically, Abordo is granted leave to amend (1) his claim under the Fifth Amendment for preindictment delay, (2) his claim(s) under the Sixth (and/or Fifth) Amendment for violating his right to counsel, and (3) his claim(s), if any, for negligent and/or intentional infliction of emotional distress. Abordo may <u>not</u> re-allege any claim for a violation of the Fifth Amendment right to a grand jury indictment.

Because Abordo's false arrest claim under the Fourth Amendment and procedural due process claim under the Fourteenth Amendment are not being dismissed, he need not *amend* those claims in an amended complaint. However, he <u>must</u> re-allege those claims in any amended complaint he may file if he intends to proceed with them going forward. This is because Abordo may not incorporate any part of the original Complaint, Dkt. No. 1, in an amended complaint. To the extent any claims are not re-alleged in an amended complaint, they may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-

alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).

In addition, to the extent an amended complaint is not filed by the deadline set forth below, this case will proceed only with the claims alleged in the original Complaint that have survived dismissal in this Order. Finally, while the filing of any amended complaint and subsequent review thereof is pending, the Court stays service on DPS.

**IV. Conclusion**

Abordo's application to proceed *in forma pauperis*, Dkt. No. 2, is GRANTED. The Complaint, Dkt. No. 1, is DISMISSED IN PART WITH PARTIAL LEAVE TO AMEND, as set forth herein.

Abordo may have until **May 10, 2019** to file an amended complaint. **The Court cautions Abordo that failure to file an amended complaint by May 10,**

\\\

\\\

\\\

**2019 may result in the dismissal of those claims that the Court has dismissed without prejudice in this Order.**

IT IS SO ORDERED.

Dated: April 10, 2019 at Honolulu, Hawaiʻi.

/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Curtis M. Abordo v. State of Hawaiʻi;* Civil No. 19-00130 DKW-RT; **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT REPAYMENT OF FEES OR COSTS; AND (2) DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND**